IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| **CHERYL D. UZAMERE,**<br><br>  **Plaintiff,**<br><br>v.<br><br>**EHIGIE EDOBOR UZAMERE, et al.,**<br><br>  **Defendants.** | CIVIL ACTION FILE<br><br>No. 1:22-CV-2745-SCJ |

## ORDER

This matter appears before the Court on resolution of its Show Cause Order (Doc. No. [5][1]), to which Plaintiff responded (Doc. No. [7]).

## I.  BACKGROUND

Plaintiff brought this Action against 306 Defendants. Doc. No. [1]. The Defendants are individual citizens of various States, corporations, organizations, and political bodies. Id. at 1–40. Plaintiff's Complaint consists of two parts. The

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

first part seeks enforcement of a Kings County Family Court Spousal Support Order ("Kings County Order"). Doc. No. [1], 46–48. The second part primarily alleges a vast RICO conspiracy in which members of the federal government, various state governments, and organizations in the United States have the "goal [ ] to normalize the practice of pedophilia and associated sexual and non-sexual acts of violence and domestic terrorism against people of African descent to satisfy the Ashkenazi Jewish community's disproportionately high percentage of individuals who are pedophiles." Id. 51–52.

On July 14, 2022, the Court issued a Show Cause Order requiring Plaintiff to show why this Action should not be transferred to the Eastern District of New York. Doc. No. [5]. The Court found that only three named defendants in the Complaint are citizens of the State of Georgia, Defendant Uzamere, Senator Jon Ossoff, and Georgia Attorney General Chris Carr. Id. at 3. Additionally, the events "giving rise" to the claims occurred primarily in Kings County, New York. Id.

Plaintiff responded and argued that the Eastern District of New York is not an amenable forum. Doc. No. [7]. Specifically, Plaintiff argued that this Action is proper in the Northern District of Georgia because there is diversity of

2

citizenship, Defendant Uzamere is a resident of Georgia (id. ¶6), and Plaintiff brings federal claims, to which district courts of the United States have jurisdiction (id.). Plaintiff also argues that the Court should not transfer the case because of Plaintiff's previous negative experiences before the United States District Court for the Eastern District of New York. Id. ¶¶ 7–10. Specifically, Plaintiff argues that two judges in New York have engaged in discrimination against her. Id. ¶¶ 8–10. In 2009, one of the aforementioned judges served on the Supreme Court for Kings County, New York. Id. at 9. The other judge currently serves on the United States District Court for the Eastern District of New York. Id.

The Court now rules.

## II. DISCUSSION

The Court finds that Part One of the Complaint is dismissed without prejudice for lack of subject matter jurisdiction, and the Action should be transferred to the Eastern District of New York.[2]

---

[2] The Court notes that Plaintiff's Complaint does not comport with the Federal Rules of Civil Procedure. "Rule 20(a) of the Federal Rules of Civil Procedure precludes a plaintiff from joining unrelated claims against various defendants unless the claims arose out of the same transaction." Smith v. Owens, 625 F. App'x 924, 928 (11th Cir. 2015). In Smith,

### A. Part One of the Complaint

The Court dismisses the claims arising from Part One of the Complaint for lack of subject matter jurisdiction. "Federal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties." DeRoy v. Carnival Corp., 963 F.3d 1302, 1311 (11th Cir. 2020). "A court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999)

The Court lacks subject matter jurisdiction over Part One of the Complaint. Diversity jurisdiction occurs when (1) an amount in controversy exceeds $75,000 and (2) is between citizens of different states." 28 U.S.C. § 1332. Here, there is no diversity of citizenship between the Parties. Plaintiff and 165 of the named Defendants are citizens of New York. Although Part One of the Complaint only asserts a claim against Mr. Uzamere, who is alleged to be a citizen of Georgia, the Complaint as a whole asserts claims against many New York citizens. Accordingly, the Court lacks diversity jurisdiction over this claim.

---

the Eleventh Circuit affirmed the district court's dismissal of a complaint for failing to follow Fed. R. Civ. P. 20(a). Id. at 928–29. Because Plaintiff is proceeding *pro se*, the Court declines to dismiss the entire Complaint for this procedural deficiency.

Additionally, the Court lacks supplemental jurisdiction over this claim. A court has supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Part One of the Complaint does not arise from the same case or controversy as Part Two. "The 'same case or controversy' test is satisfied if 'the [federal and state] claims arise from the same facts[ ] or involve similar occurrences, witnesses or evidence.'" Regenicin, Inc. v. Lonza Walkersville, Inc., 997 F. Supp. 2d 1304, 1309 (N.D. Ga. 2014) (quoting Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996)).

The thrust of Part Two of the Complaint arises from "defendants' commission of Sherman Antitrust violating, RICO-predicate acts against the U.S. government and its citizens for which the goal is to normalize the practice of pedophilia." Doc. No. [1], 51–52. Part One of the Complaint is exclusively a claim to enforcement of a spousal support order. Doc. No. [1], 48. There is no substantial connection between the enforcement of a spousal support order and the alleged RICO conspiracy.[3] Id. at 50–51. There are no meaningful similarities

---

[3] The Court notes that Part Two does discuss the Kings Court Order in relation to the RICO conspiracy. Doc. No. [1], 80.

between the enforcement of the Kings County Order and the alleged RICO conspiracy. Plaintiff's RICO conspiracy primarily involves legislative action and inaction by federal and state public officials. See, e.g., Doc. No. [1], 56. Conversely, the enforcement of the Kings County Order requires a determination of whether Mr. Uzamere was, in fact, the proper party to the suit. It is unlikely that the evidence and witnesses used to prove the validity of a spousal support order will overlap with those used to prove a pedophilia-based RICO conspiracy. In fact, Plaintiff's own allegations show the claims involving the Kings County Order and the RICO conspiracy are not connected. See id. at 80–81.

> 39) The objective of this action are:
>
> a) To facilitate the successful receipt of this Court's enforcement of the Kings County Family Court's interlocutory spousal support order . . .
> b) More importantly, the primary goal of my complaint is to establish that the tortious and criminal acts that I allege were committed against me by the defendants . . . RICO-predicate criminal enterprise against people of African descent . . ."

Thus, a claim for enforcement of the Kings County Order does not arise out of the same case or controversy as the RICO conspiracy. Accordingly, the Court must dismiss Part One of the Complaint for lack of subject matter jurisdiction.[4]

### B. Transfer for Forum Non-Conveniens

The Court finds that this Action should be transferred to the Eastern District of New York. "For the convenience of parties and witnesses, in the

---

[4] Because the Court finds that it lacks subject matter jurisdiction over this Action, the Court declines to decide whether Plaintiff's claims regarding the Kings County Order are also dismissed under the domestic relations exception to jurisdiction. See McCavey v. Barnett, 629 F. App'x 865, 867 (11th Cir. 2015) (citing Stone v. Wall, 135 F.3d 1438, 1441 (11th Cir. 1998)) ("A district court should abstain from cases in which the following policies are present: (1) there is a strong state interest in domestic relations; (2) the state courts can competently settle the family dispute; (3) the state continues to supervise the decrees; and (4) federal dockets are congested."). Determining whether a case falls within the domestic relations exception requires the Court to independently assess whether a claim is one involving issues specifically within the province of domestic relations court. See Kirby v. Mellenger, 830 F.2d 176, 178 (11th Cir. 1987) ("Not every case involving a dispute between present or former spouses" involves the domestic relations exception, and federal courts "should sift through the claims of the complaint to determine the true character of the dispute to be adjudicated."); see also Greiner v. De Capri, 403 F. Supp. 3d 1207, 1220 (N.D. Fla. 2019) (holding that the domestic relations exception did not attach because Plaintiff sought to enforce the right to financial support granted by operation of federal statute, not a divorce decree, alimony, or child support decree). It is unclear from Plaintiff's Complaint whether the Kings County Order provided financial support under federal or state law. See Doc. No. [1], 48 (Plaintiff cites New York law and the Social Security Act as a basis for the spousal support order). Plaintiff has not provided the Court a legible copy of the Kings County Order; thus, the Court cannot determine whether the domestic relations exception applies in this case.

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ." 28 U.S.C. § 1404(a). Before *sua sponte* transferring an Action, a Court must determine whether "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of [transfer], and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1330 (11th Cir. 2011). The ultimate decision to transfer a case to another district is within the Court's sound discretion. Brown v. Conn. Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991).

### 1. *Adequate alternative forum*

The Eastern District of New York is an adequate alternative forum because this Action could have originally been brought there. The Eastern District of New York has federal question subject matter jurisdiction over a federal civil RICO claim. 28 U.S.C. § 1331. The Eastern District of New York may exercise personal jurisdiction, and venue is proper over these claims.

Under the RICO statute, the Eastern District of New York likely has personal jurisdiction over all Defendants. The RICO statute provides that "a civil RICO action can only be brought in a district court where personal

jurisdiction based on minimum contacts is established as to at least one defendant." PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998). Plaintiff made allegations against numerous individuals, organizations, and businesses that are citizens of the State of New York. Doc. No. [1], 85. For example, Plaintiff lists Governor Kathy Hochul, the Governor of the State of New York, the members of the New York State Senate Committee on the Judiciary, the New York Daily Post, and Disability Rights New York as some of the Defendants in this lawsuit. Doc. No. [1]. Plaintiff has alleged that these entities and individuals "commission[ed] tortious acts that are covered by the definition of RICO-predicate criminal offenses." Id. at 72. Accordingly, numerous defendants alleged to have engaged in the RICO conspiracy are citizens of New York; therefore, the Eastern District of New York has general personal jurisdiction over those defendants.

"Section 1965(b) provides for nationwide service and jurisdiction over 'other parties' not residing in the district, who may be additional defendants of any kind, including co-defendants, third party defendants, or additional counter-claim defendants. This jurisdiction is not automatic but requires a showing that the 'ends of justice' so require." PT United Can Co., 138 F.3d at 71. The remaining

9

Defendants in this action are alleged to have engaged in the same RICO conspiracy as the citizens of New York. Doc. No. [1]. Accordingly, the Eastern District of New York likely has personal jurisdiction over the remaining Defendants.[5]

Venue is also proper in the Eastern District of New York because a substantial part of the events occurred in the Eastern District of New York. Kings County and Brooklyn are mentioned 237 times throughout the Complaint. Id. Accordingly, the Court finds that a substantial part of the events giving rise to this Action occurred in the Eastern District of New York.

The Court finds that the Eastern District of New York is an adequate forum for Plaintiff to bring her claims.

### 2. *Private and public factors*

The private and public factors also support transferring this Action to the Eastern District of New York. The relevant private factors include (1) ease of access to sources of proof; (2) availability of the compulsory process for attendance of the unwilling; (3) cost of obtaining the attendance of witnesses; and

---

[5] The Court declines to determine whether the ends of justice require jurisdiction over the 306 defendants named in Plaintiff's Complaint. The Court leaves that determination to the sound discretion of the transferee court.

(4) cost of trial. Leon v. Million Air, Inc., 251 F.3d 1305, 1314 (11th Cir. 2001). The public interest factors include (1) administrative difficulties and (2) interest in having local controversies decided in the home forum. Id. at 1310. Additionally, great deference is to be given to a plaintiff's choice of forum; however, that "weakens when the plaintiff is a foreigner litigating far from home." Id. at 1315.

The Court finds that all factors weigh in favor of transferring this case to the Eastern District of New York. In the case *sub judice*, a substantial part of the events giving rise to this Action occurred in the Eastern District of New York and not in the Northern District of Georgia. Plaintiff mentions the State of New York 1,427 times throughout Plaintiff's Complaint, and Kings County and Brooklyn are mentioned 237 times throughout the Complaint. Conversely, three of the named Defendants are residents of Georgia, Georgia is mentioned sixteen times throughout the Complaint, and the only allegations of events that occurred in Georgia are identical to the events that allegedly occurred in forty-nine other states. Compare id. ¶¶ 570–571; with id. ¶¶ 552–569, 572–647. Thus, the availability of proof and access to witnesses is likely easier in the Eastern District of New York than in Georgia. Additionally, the cost of the trial is significantly less in the Eastern District of New York. As stated, 166 of the Parties are based

out of New York, and only three reside in Georgia. Accordingly, the litigation is more cost-effective in New York rather than in Georgia.

Similarly, the public factors weigh in favor of adjudicating this matter in the Eastern District of Georgia. New York has a strong interest in hearing local cases. Here, the majority of Plaintiff's Complaint discusses actions that individuals and organizations, if held in New York, took to further the alleged RICO conspiracy. See id. at 52–69. Conversely, the only events alleged to occur in Georgia are identical to those alleged to have occurred in 48 other states. Compare id. ¶¶ 570–571; with id. ¶¶ 552–569, 572–647. Thus, New York and not Georgia courts have a strong interest in adjudicating this case. Additionally, it is more administratively efficient to have a New York court decide issues of New York law. Plaintiff asserts violations of nine New York penal laws (id. at 85) and New York common law. Id. Conversely, Plaintiff has made no allegations for violations of Georgia law. Thus, the public factors weigh in favor of transferring this Action to the Eastern District of New York.

Although Plaintiff chose to bring this Action in the Northern District of Georgia and not the Eastern District of New York, that choice deserves little deference. Plaintiff has no tangible connection to the Northern District of

12

Georgia, Plaintiff is a citizen of New York, not Georgia, and many of the events alleged in the Complaint occurred in New York. Accordingly, the Court finds that this Action should be transferred to the Eastern District of New York.

Plaintiff does not dispute that a substantial part of the events giving rise to this cause of action occurred in the Eastern District of New York and not in the Northern District of Georgia. See Doc. No. [7]. Plaintiff argues that transferring this case to the Eastern District of New York is unconstitutional and criminal because she "was subjected to extreme emotional torture, defamation, sexual assault, and falsely charged with crimes that [she] did not commit by two judges, one of whom works at the U.S. District Court for the Eastern District of New York." Id. at 4–5. While the Court is sympathetic to Plaintiff's negative experiences in the State and Federal Courts in New York, that consideration does not outweigh the other factors that favor transfer. Because the public and private interest factors overwhelmingly weigh in favor of transferring this Action to the Eastern District of New York, the Court finds that this Action should be transferred to the Eastern District of New York.

13

### *3.   Sua sponte transfer*

The Court recognizes that no motion to transfer has been filed; however, the Court may transfer a case *sua sponte* under 28 U.S.C. § 1404. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ." 28 U.S.C. § 1404(a). As the Court noted above, this Action could have been initially brought in the Eastern District of New York. Thus, a *sua sponte* transfer to the Eastern District of New York is available.

The Court also finds that in the interest of justice, this Action should be transferred to the United States District Court for the Eastern District of New York instead of dismissed. Plaintiff paid the $402.00 filing fee to bring this Action (Doc. No. [1]) despite having a financial hardship (Doc. No. [3]). Thus, under these circumstances, the Court finds that dismissing this Action would not be in the interest of justice. Accordingly, the Court deems transfer to be appropriate.

## III.   CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Part One of this Action **WITHOUT PREJUDICE**.

14

Additionally, the Court **DIRECTS** the Clerk of Court to transfer this Action, including all of Plaintiff's pending motions to the United States District Court for the Eastern District of New York. The Clerk is further **DIRECTED** to close this case.

IT IS SO ORDERED this 17th day of August, 2022.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE